**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carl Pehr Erik Karlsson, et al., | No. CV-19-04510-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Ronn Motor Group Incorporated, et al., | |
| Defendants. | |

**INTRODUCTION**

This action, which was initiated in June 2019, involves claims against three defendants: (1) Ronn Motor Group, Inc. ("RMG"); (2) Ronnal Maxwell Ford ("Ford"), who is RMG's chief executive officer; and (3) Jane Doe Ford, who is Ford's spouse. (Doc. 1 ¶¶ 3-5, 19.) During the initial stages of the case, there was very little activity: RMG was served in July 2019, never answered the complaint, and had a default entered against it, while the Fords were only served in January 2020, after the Court granted Plaintiffs' motion for alternative service.

The service upon the Fords prompted a flurry of activity. Soon after service was completed, all three defendants filed a motion to dismiss, arguing that the contract on which Plaintiffs' claims are premised contains a forum selection clause requiring Plaintiffs to litigate in federal court in Maryland. (Doc. 22.) In response, Plaintiffs have (1) moved to strike the motion to dismiss because RMG, as a defaulted party, cannot file motions (Doc. 23), (2) moved for default judgment against RMG (Doc. 24), and (3) argued that the

dismissal request should be denied on the merits because the claims in this case are based in part on a different contract that contains an Arizona forum selection clause (Doc. 27).

The pending motions will be resolved as follows.  First, Plaintiffs' motion to strike will be denied because it constitutes a procedurally improper mechanism for opposing the relief sought in a motion.  Second, Defendants' motion to dismiss will be granted.  Plaintiffs overlook that the contract on which they seek to rely contains a forum selection clause requiring that suit be filed in Arizona *state* court, not federal court.  Thus, regardless of whether the state courts of Arizona or the federal courts of Maryland are the proper forum for this lawsuit, it is clear that this Court is not the proper forum.  Third, Plaintiffs' motion for default judgment against RMG, to the extent it is not moot, will be denied on the merits.

## BACKGROUND

On June 20, 2019, Plaintiffs initiated this action.  (Doc. 1.)  The factual allegations in the complaint, which the Court presumes to be true for purposes of the pending motions, are as follows.

Plaintiffs are residents and citizens of Sweden who allege they were fraudulently induced by Ford to invest in securities offered by RMG.  (*Id.* ¶¶ 1-2, 15, 22.)  In July 2017, Plaintiffs entered into contracts with RMG, entitled "Subscription Agreements," that required RMG to provide each Plaintiff with "(a) a 10% interest-bearing, unsecured convertible promissory note convertible into RMG's $0.001 par value common stock at a conversion price of $1.875 per share, and (b) a two-year warrant to purchase shares of RMG's common stock at a par value of $0.001 per share, at an exercise price of $2.50." (*Id.*)  Around the same time, Plaintiffs and RMG also executed the promissory notes ("Promissory Notes") described in the Subscription Agreements, which obligated each Plaintiff to lend $58,125 to RMG.  (*Id.* ¶¶ 26, 28.)  Plaintiffs sent this money (a total of $116,250) to RMG via wire transfer.  (*Id.* ¶¶ 27, 29.)

In July 2018, the one-year Promissory Notes matured, yet RMG did not remit any cash or common stock to Plaintiffs.  (*Id.* ¶¶ 33-36.)  Subsequent demands for payment went

unanswered. (*Id.* ¶¶ 37-41.) As a result, Plaintiffs have asserted claims for breach of contract, unjust enrichment, breach of the covenant of good faith and fair dealing, fraudulent inducement, intentional misrepresentation, negligent misrepresentation, and fraud in connection with the sale of securities. (*Id.* at 8-17.)

Summonses were issued on June 24, 2019. (Doc. 8.) Plaintiffs had until September 18, 2019 to serve Defendants. Fed. R. Civ. P. 4(m).

On September 5, 2019, Plaintiffs applied for entry of default against RMG, attaching a notice of service that indicated RMG had been served on July 8, 2019. (Doc. 11.) The next day, the Clerk entered default against RMG. (Doc. 12.)

Plaintiffs spent the next five months attempting to serve the Fords, but Plaintiffs did not file a motion for default judgment as to RMG during this period.[1]

On February 14, 2020, Plaintiffs filed proof that the Fords had been served.[2] (Doc. 21.)

On February 18, 2020, Defendants filed a motion to dismiss. (Doc. 22.)

On February 21, 2020, Plaintiffs moved to strike the motion to dismiss. (Doc. 23.)

On February 28, 2020, Plaintiffs filed a motion for default judgment against RMG. (Doc. 24.)

On March 3, 2020, Plaintiffs filed an opposition to the motion to dismiss. (Doc. 27.)

On March 6, 2020, Defendants filed a two-paragraph response to the motion to strike, stating that Defendants oppose the motion as to the Fords but not as to RMG. (Doc. 28.)

---

[1] Plaintiffs filed motions for an extension of time and alternative service as to the Fords (Docs. 13, 15, 16), which were granted (Docs. 14, 17). Plaintiffs had attempted service at Ford's place of business six times and were rebuffed, and Plaintiffs hired a private investigator who concluded that the Fords were using aliases, P.O. boxes, and fake phone numbers to avoid detection. (Doc. 16 at 3.)

[2] On January 21, 2020, the Court ordered that Plaintiffs could serve the Fords via USPS certified mail addressed to RMG's registered agent in Delaware. (Doc. 17 at 6.) Plaintiffs were given 14 days to serve the Fords (*id.*), such that proof of service should have been filed by February 4, 2020. On February 14, 2020, Plaintiffs filed proof that the Fords had been served via USPS certified mailing on January 23, 2020, which was delivered on January 27, 2020. (Doc. 21.)

On March 10, 2020, the Fords filed a reply in support of the motion to dismiss. (Doc. 29 at 2.)

**ANALYSIS**

I.   Motion to Strike

Plaintiffs move to strike the motion to dismiss because a default was entered against RMG in September 2019 and "'[s]o long as parties are in default, they have no right to participate in any further proceedings in the case.'" (Doc. 23 at 2, citation omitted.)

The motion to strike will be denied because it is an inappropriate device for opposing a motion to dismiss. "Unless made at trial, a motion to strike may be filed only if it is authorized by statute or rule, such as Federal Rules of Civil Procedure 12(f), 26(g)(2) or 37(b)(2)(A)(iii), or if it seeks to strike any part of a filing or submission on the ground that it is prohibited (or not authorized) by a statute, rule, or court order." LRCiv 7.2(m)(1). A motion to dismiss for improper venue is authorized by Rule 12(b)(3) of the Federal Rules of Civil Procedure, and there is no statute or rule permitting a motion to strike a motion to dismiss. Thus, the proper way to respond to a motion to dismiss, when the opposing party believes the movant is not entitled to relief, is to file a response that explains why the motion lacks merit. *See, e.g.*, *ACC Indus., Inc. v. Bart St. II, LLC*, 2017 WL 7725262, *1-2 (D. Nev. 2017) ("As defined in Rule 12(f), motions to strike are directed to 'pleadings' only. . . . Thus, a motion to strike technically is not available to strike material contained in motions and other briefs."); S. Gensler, 1 Federal Rules of Civil Procedure, Rules and Commentary, Rule 12, at 314-15 (2018) ("[M]otions to strike under Rule 12(f) are generally viewed with disfavor, perhaps because experience with dubious Rule 12(f) motions has led courts to view them skeptically. Thus, while courts acknowledge that motions to strike can serve legitimate ends, they certainly do not encourage lawyers to file them.").[3]

---

[3] Additionally, the motion to strike appears to be directed only as to RMG but not as to the Fords. (Doc. 23 at 2 ["Defendant Ronn Motor Group, Inc. should not be able to completely disregard the default that has been entered against it for months."].) Plaintiffs do not identify any authority suggesting that a court may "strike" a document as it pertains to some parties but not others.

- 4 -

II.   Motion To Dismiss

Defendants move to dismiss under Rule 12(b)(3) because "Plaintiffs admit—and in fact affirmatively allege—the governing Subscription Agreements require that 'disputes shall be adjudicated in Montgomery County, Maryland . . . .'" (Doc. 22 at 3 [citing Doc. 1 ¶ 14].) Plaintiffs disagree, identifying what appear to be two overarching reasons why they believe venue properly lies in this Court: (1) this Court possess "general jurisdiction" over all three defendants in light of RMG's "continuous and systematic" business activities (which include holding itself out as conducting business in Arizona), the Fords' close relationship with RMG, and RMG's default status in this action; and (2) their claims do not arise "solely out of the Subscription Agreements" but instead arise in part from the Promissory Notes, which "each contain[] a forum selection clause establishing that Arizona is the exclusive jurisdiction and venue governing any dispute arising from them." (Doc. 27.)

### A.   Legal Standard

A forum selection clause is a ground for not exercising jurisdiction over a case, similar to abstention in favor of state court jurisdiction or refusal to exercise supplemental jurisdiction. *Kamm v. ITEX Corp.*, 568 F.3d 752, 756 (9th Cir. 2009). Federal law governs the validity of a forum selection clause. *Manetti-Farrow, Inc., v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). If the language of the forum selection clause mandates that an action be brought in a specified venue, courts must enforce the clause, absent exceptional circumstances not at issue here. *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989) ("[W]here venue is specified with mandatory language the clause will be enforced.").[4]

Whether a forum selection clause is mandatory or permissive is a question of contract interpretation. *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th

---

[4] "A contractual forum selection clause is 'prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances.'" *Docksider,* 875 F.2d at 763 (citation omitted). Here, as in *Docksider*, no party alleges "fraud or undue influence underlying the forum selection clause that would render its enforcement unreasonable." *Id.*

- 5 -

Cir. 1987). "A primary rule of interpretation is that '[t]he common or normal meaning of language will be given to the words of a contract unless circumstances show that in a particular case a special meaning should be attached to it.'" *Id.* (citation omitted).

### B. The Subscription Agreements

The complaint acknowledges that the Subscription Agreements "indicate that disputes shall be adjudicated in Montgomery County, Maryland" (Doc. 1 ¶ 14), and indeed, the Subscription Agreements, which are attached to the complaint, provide:

> Notwithstanding the place where this Subscription Agreement may be executed by any of the parties hereto, the parties expressly agree that all the terms and provisions hereof shall be construed in accordance with and governed by the laws of the State of Maryland. ***The parties hereby agree that any dispute which may arise between them arising out of or in connection with this Subscription Agreement shall be adjudicated only before a Federal court located in Montgomery County, Maryland and they hereby submit to the exclusive jurisdiction of the federal courts located in Montgomery County, Maryland with respect to any action or legal proceeding commenced by any party***, and irrevocably waive any objection they now or hereafter may have respecting the venue of any such action or proceeding brought in such a court or respecting the fact that such court is an inconvenient forum, ***relating to or arising out of this Subscription Agreement or any acts or omissions relating to the sale of the securities hereunder***, and consent to the service of process in any such action or legal proceeding by means of registered or certified mail, return receipt requested, in care of the address set forth below or such other address as the undersigned shall furnish in writing to the other.

(Doc. 1-9 at 7-8; Doc. 1-11 at 2 [emphasis added].) The Subscription Agreements were signed by both Plaintiffs. (Doc. 1-9 at 10; Doc. 1-11 at 6.)

The language of the forum selection clause in each Subscription Agreement is mandatory. It provides that "any dispute which may arise between [the parties] arising out of or in connection with this Subscription Agreement *shall be* adjudicated *only* before a Federal court located in Montgomery County, Maryland" and further specifies that the parties "submit to the *exclusive* jurisdiction of the federal courts located in Montgomery County, Maryland with respect to any action or legal proceeding commenced by any party . . . relating to or arising out of this Subscription Agreement or any acts or omissions relating to the sale of the securities hereunder." (Doc. 1-9 at 7-8; Doc. 1-11 at 2 [emphasis added].) Such language is sufficient to mandate that an action arising out of the Subscription Agreements be brought in a federal court in Montgomery County, Maryland.

- 6 -

*Docksider*, 875 F.2d at 763–64.

In light of this mandatory language, Plaintiffs' arguments concerning why this Court possesses "general jurisdiction" over Defendants (Doc. 27 at 2, 4-7) are irrelevant. Defendants are not moving to dismiss based on a lack of personal jurisdiction—they are moving to dismiss based on a valid forum selection clause. And absent a showing "that trial in the contractual forum will be so gravely difficult and inconvenient that [Plaintiffs] will for all practical purposes be deprived of [their] day in court"—which has not been made here—"there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold [Plaintiffs] to [their] bargain" regarding the exclusive venue for actions arising out of the Subscription Agreements. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972).

### C. The Promissory Notes

Plaintiff's other argument is that "Arizona is the choice of venue in the Promissory Notes signed by RMG" and "the forum selection clause in the Promissory Notes should control." (Doc. 27 at 2-3.)

The Promissory Notes, also attached to the complaint, provide:

> The parties expressly agree that all the terms and provisions hereof shall be construed in accordance with and governed by the laws of the State of Arizona. ***The parties hereby agree that any dispute which may arise between them arising out of or in connection with this Agreement shall be adjudicated before a court of competent jurisdiction in the State of Arizona and they hereby submit to the exclusive jurisdiction of the courts of the State of Arizona with respect to any action or legal proceeding commenced by any party*** and irrevocably waive any objection they now or hereafter may have respecting the venue of any such action or proceeding brought in such a court or respecting the fact that such court is an inconvenient forum.

(Doc. 1-13 at 5; Doc. 1-14 at 5 [emphasis added].) Like the language in the Subscription Agreements, the language of the forum selection clause in the Promissory Notes is mandatory.

Nevertheless, the difficulty with Plaintiffs' reliance on the Promissory Notes is that this Court—the United States District Court for the District of Arizona—does not qualify as "a court[] of the State of Arizona." (Doc. 1-13 at 5; Doc. 1-14 at 5.) Under Ninth Circuit law, federal courts are deemed to be "in" their home states, but not "of" them. *Doe 1 v.*

*AOL LLC*, 552 F.3d 1077, 1082 (9th Cir. 2009).  Thus, in *AOL*, the Ninth Circuit held that a forum selection clause conferring exclusive jurisdiction upon "the courts of Virginia" did not encompass "state and federal courts in Virginia" and instead "refer[red] to Virginia state courts only." *Id.* at 1081.

The bottom line is that the Subscription Agreements contain a forum selection clause requiring litigation in certain federal courts in Virginia while the Promissory Notes contain a forum selection clause requiring litigation in the state courts of Arizona.  This Court is neither.  Thus, Plaintiffs' claims will be dismissed without prejudice due to improper venue.[5]

### D. Scope Of Dismissal

Based on the forum selection clauses, Plaintiffs' claims against all three Defendants will be dismissed.  Although the dismissal arguably should apply only to the Fords—it seems odd to allow RMG to profit from a dismissal motion filed after it defaulted—that outcome would only delay the inevitable.  As explained in Part III *infra*, Plaintiffs are not entitled to a default judgment against RMG at this time (in part because the forum-selection-clause issue means that RMG possesses a potentially valid defense), and it seems pointless to dissolve the default as to RMG just so RMG can file another motion to dismiss based on improper venue.  Additionally, the presence of the forum selection clauses gives this Court a basis "not [to] exercise[e] jurisdiction over [the] case, similar to abstention in favor of state court jurisdiction or refusal to exercise supplemental jurisdiction." *Kamm,* 568 F.3d at 756.  *See also Howard Brown Co. v. Reliance Ins. Co.*, 66 B.R. 480, 482 (E.D. Pa. 1986) (granting defendant's motion challenging venue, which was filed after entry of default).

…

---

[5] The Court notes that it may be necessary, in a future lawsuit, for the court overseeing the litigation to decide how to reconcile the seemingly contradictory forum selection clauses. *Primary Color Sys. Corp. v. Agfa Corp.*, 2017 WL 8220729, *6 (C.D. Cal. 2017) (noting that courts have various options when presented with contradictory clauses, including "undertak[ing] a fact-intensive analysis to determine which forum-selection clause should be enforced").  But it is apparent that this Court—which isn't the appropriate forum under either agreement—shouldn't be the court making that decision.

III. <u>Motion for Default Judgment</u>

Because Plaintiffs' claims against RMG have been dismissed without prejudice based on improper venue, it follows that Plaintiffs' motion for default judgment against RMG must be dismissed as moot.

The motion for default judgment also fails on the merits. After entry of default, the facts alleged in the complaint are assumed to be true, except as to damages. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.").

The "decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The following factors, known as the *Eitel* factors, may be considered when deciding whether default judgment is appropriate: (1) the possibility of prejudice to the plaintiff, (2) the merits of the claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of factual disputes, (6) whether the default was due to excusable neglect, and (7) the policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

**A.     Default Judgments Are Disfavored**

In every case, the seventh factor—the policy favoring decisions on the merits—generally weighs against default judgment. After all, the Court's "starting point is the general rule that default judgments are ordinarily disfavored" because "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. On the other hand, the existence of Rule 55(b) of the Federal Rules of Civil Procedure, which authorizes default judgments, "indicates that this preference, standing alone, is not dispositive." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Put simply, "the default mechanism is necessary to deal with wholly unresponsive parties who could otherwise cause the justice system to grind to a halt. Defendants who appear to be 'blowing off' the complaint should expect neither sympathy nor leniency from the court." 2 Gensler, Federal Rules of Civil Procedure Rules and Commentary, Rule 55,

at 119-20 (2020).

Here, although RMG was unresponsive for a long time, it has now retained counsel and begun participating in this action—it is not "wholly unresponsive." Although RMG is not entitled to sympathy or leniency, its belated participation means this action could be decided on the merits. Thus, the seventh factor weighs against default judgment more strongly here than it does in a case where the defendant remains entirely absent.

### B. No Indication Of Excusable Neglect

Although RMG is participating now, it has not provided any indication that its failure to participate in a timely manner was due to excusable neglect. Although RMG's counsel was unaware of the default at the time counsel filed the motion to dismiss, once RMG's counsel became aware, no excuse was offered. (Doc. 28 at 1.) RMG's failure to oppose the motion for default judgment further suggests that RMG has no excuse. This factor weighs in favor of granting default judgment.

### C. Amount Of Money At Stake

Plaintiffs state that RMG owes "$116,250.00, exclusive of interest, costs, and fees," and that "[p]rejudgment interest on each of the notes through March 18, 2020 equals $15,015.63 . . . each, for a principal balance of $73,140.63 owed to each Plaintiff; $146,281.26 collectively." (Doc. 24 ¶¶ 9, 11.) Plaintiffs also seek $525 in costs and $14,220.17 in attorneys' fees, increasing the total amount sought to $161,026.43. (Doc. 24-5 ¶¶ 7-9.)

"When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Bd. of Trustees v. Core Concrete Const., Inc.*, 2012 WL 380304, *4 (N.D. Cal. 2012), *report and recommendation adopted,* 2012 WL 381198 (N.D. Cal. 2012). Here, the total money judgment sought ($161,026.43) is substantial. This factor weighs against granting default judgment.

### D. Prejudice To The Plaintiffs

In a typical default judgment scenario, where the defendant remains absent from the litigation even after the motion for default judgment is filed, prejudice to the plaintiff is

obvious—if the motion for default judgment were denied, the plaintiff would be without other recourse for recovery. *PepsiCo*, 238 F. Supp. 2d at 1177. Here, Plaintiffs can seek recovery through the preferred method—litigating the action. Plaintiffs may have suffered some prejudice based on the lengthy delay, but that delay was caused in part by Plaintiffs' decision not to file a motion for default judgment until February 28, 2020, which was over five months after the Clerk entered default against RMG. Furthermore, Plaintiffs did not identify any prejudice in their motion for default judgment. (Doc. 24.) This factor weighs against granting default judgment.

### E. Meritorious Defense

As for the remaining factors—the merits of the claims, the sufficiency of the complaint, and the possibility of factual disputes—Defendants have demonstrated that this Court is not the proper venue for this action. Thus, the factors regarding the merits weigh strongly against default judgment. *See, e.g.*, *Gage v. Somerset Cty.*, 369 F. Supp. 3d 252, 260 (D.D.C. 2019) ("[T]he Court need reach only one of [various defenses to default], improper venue, which the Court readily finds to be meritorious.").

### F. Ruling As To Default Judgment

The lack of any excuse for the default weighs in favor of granting default judgment, but all other factors weigh against it. Thus, the Court will not exercise its discretion to grant default judgment.

\*\*\*

Accordingly, **IT IS ORDERED** that:

(1) Defendants' motion to dismiss (Doc. 22) is **granted**. Plaintiffs' claims are dismissed without prejudice.

(2) Plaintiffs' motion to strike (Doc. 23) is **denied**.

(3) Plaintiffs' motion for default judgment (Doc. 24) is **denied**.

…

…

…

1  (4) The Clerk of Court terminate this action and enter judgment accordingly.

2  Dated this 21st day of May, 2020.

_____
Dominic W. Lanza
United States District Judge